## UNITED STATES DISRICT COURT
### Northern District of Iowa
### Western Division

Danny Wisner :
:
    Plaintiff :
:
:
v. : COMPLAINT AND
: JURY DEMAND
: $\mathcal{C}14\text{-}4031\,DEO$
CITY OF SIOUX CITY, BOB SCOTT individually :
  and as MAYOR BOB SCOTT, JOHN FITCH :
individually and as Councilman JOHN :
FITCH, BRIDEY HAYES individually and as :
BRIDEY HAYES HUMAN RESOURSE :
DIRECTOR, JADE DUNDAS individually and :
as JADE DUNDAS PUBLIC WORKS :
DIRECTOR, BRIAN FAHRENDHOLZ individually:
and as BRIAN FAHRENDHOLZ FIELD :
SERVICES MANAGER, BRAD BALDWIN :
individually and as BRAD BALDWIN :
FIELD SERVICES SUPERVISOR AND PATRICK :
SIMONS individually and as PATRICK :
SIMONS FIELD SERVICES SUPERVISOR :
:
    Defendants. :

COMES NOW Plaintiff Danny Wisner, appearing Pro Se and hereby

set forth the following causes of action against the Defendants:

### JURISDICTIONAL ALLEGATIONS

1. This action is based on the provisions of 42 U.S.C. Section 2000e, et

seq., commonly referred to as the Civil Rights Act of 1964 and all

amendments thereto. Subject matter jurisdiction is conferred upon the

Case 5:14-cv-04031-DEO   Document 1   Filed 04/29/14   Page 1 of 25

Court by 42 U.S.C. Section 2000e*5(f). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. Section 1367.

## VENUE

2.     The venue is proper pursuant to 42 U.S.C. 2000e*5(f) because it is brought in the judicial district of the State in which the unlawful employment practice was committed and is the judicial district where Plaintiff's employment records were maintained. Venue is also proper pursuant to 28 U.S.C. Section 1391(b) because it is brought in a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

3.     Plaintiff Danny Wisner (hereinafter Plaintiff) is and was at all times material hereto a citizen of the United states, a resident of Sioux City, Woodbury County, Iowa and over twenty-one (21) years of age.

4.     Defendant City of Sioux City, Iowa (hereinafter City of Sioux City or City) is a city duly incorporated under the laws of the State of Iowa.

5.     Defendant Bob Scott (hereinafter Scott) is and was at all times material hereto a citizen of the United States, a resident of Sioux City, Woodbury County, Iowa, over twenty-one (21) years of age and an elected official of the City of Sioux City.

6.     Defendant John Fitch (hereinafter Fitch) is and was at all times material hereto a citizen of the United States, a resident of Sioux City, Woodbury County, Iowa, over twenty-one (21) years of age and an elected official of the City of Sioux City.

7.     Defendant Bridey Hayes (hereinafter Hayes) is and was at all times material hereto a citizen of the United States, a resident of Sioux City, Woodbury County, Iowa, over twenty-one (21) years of age and an employee of the City of Sioux City.

8.     Defendant Jade Dundas (hereinafter Dundas) is and was at all times material hereto a citizen of the United States, a resident of Sioux City, Woodbury County, Iowa, over twenty-one (21) years of age and an employee of the City of Sioux City.

9.     Defendant Brian Fahrendholz (hereinafter Fahrendholz ) is and was at all times material hereto a citizen of the United States, a resident of Sioux City, Woodbury County, Iowa, over twenty-one (21) years of age and an employee of the City of Sioux City.

10.     Defendant Brad Baldwin (hereinafter Baldwin) is and was at all times material hereto a citizen of the United States, a resident of Sioux City, Woodbury County, Iowa, over twenty-one (21) years of age and an employee of the City of Sioux City.

11.    Defendant Patrick Simons (hereinafter Simons) is and was at all times material hereto a citizen of the United States, a resident of Sioux City, Woodbury County, Iowa, over twenty-one (21) years of age and an employee of the City of Sioux City.

### CONDITIONS PRECEDENT

12.    Plaintiff has timely filed a Complaint of Discrimination with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission (Exhibit A attached hereto and is incorporated by reference hereto as if fully set forth herein)

13.    The Iowa Civil Rights Commission has issued Plaintiff a Notice of Right to Sue Letter (Exhibit B attached hereto and is incorporated by reference hereto as if fully set forth herein)

14.    This Complaint is filed with the Court within ninety (90) days of receipt of the Notice of the Right to Sue letter referenced above.

### GENERAL ALLEGATIONS

15.    At all times material hereto, City met the definition of "Employer" as set forth in 42 U.S.C. Section 2000e*5(b) or was working under the direction of said "Employer" or was representing the interest of said "Employer" and the Plaintiff was at all times herein set forth "employee" within the definition of said section.

16. Plaintiff was formerly a full-time employee of the City of Sioux City Fire Department from February of1991 through June of 2004, with benefits. Said benefits included a retirement plan through Municipal Fire and Police Retirement System of Iowa (hereinafter MFPRSI).

17. Plaintiff was inflicted with a heart condition during his tenure with City Fire Department.

18. Plaintiff was evaluated at the University of Iowa Hospital, Iowa City, Iowa on or about June of 2004 for his acute heart condition at the request of MFPRSI. The results of said evaluation found Plaintiff to be partially disabled and unable to perform physical activity to a one (1) hundred percent standard as set by MFPRSI.

19. Plaintiff was released from employment with City Fire Department on June 12, 2004

20. Plaintiff receives a monthly disability pension from MFPRSI. As of July, 2004, the City no longer contributes any moneys toward Plaintiff's retirement plan, health/dental/life insurance or deferred compensation.

21. With the exception of a limited [heart only] prescription plan, the City makes no monthly pecuniary contribution to Plaintiff.

22. In 2011, Plaintiff completed a City and Civil Service application for a Field Services "maintenance worker" position.

23.    Plaintiff disclosed his previous employment with the City Fire Department on the City and Civil Service's application for "maintenance worker". The City Human Resources Director and Civil Service Commission accepted Plaintiff's employment application.

24.    In the early months of 2011, Plaintiff passed the required written exam and later in the year 2011, Plaintiff also passed the driving exam.

25.    Plaintiff scored high enough on both exams to be placed on the Civil Service Commission hiring list for "maintenance worker" in Field Services.

26.    During the Field Services' interview process for employment, Plaintiff disclosed his previous employers, including his thirteen and one half years with the City Fire Department, the reason he left said Fire Department and that he was receiving a monthly disability pension from MFPRSI.

27.    Field Services supervisors conducting the interview were Overnight Supervisor Mark Oregon, Asphalt Supervisor Patrick Simons, Concrete Supervisor Brad Baldwin and Parks Supervisor Bill Gates. Mayor Scott and Councilman Fitch were not present at said interview and rightfully so. The City Mayor or Councilperson's do not hire or fire low level employees such as the Plaintiff and therefore do not sit in on interviews.

28.    The City has a policy in place in which each department hires and fires its own subordinate employees.

29.    On or about October 2011, Plaintiff was presented with a "conditional offer of employment" with Field Services from Field Services Manger Fahrendholz.

30.    Plaintiff passed all physical testing and drug screening as required for employment with Field Services as a "maintenance worker".

31.    On or about Nov. 14, 2011, Plaintiff began employment with the City in Field Services as a maintenance worker, a full-time position with benefits. There are approximately 125 full-time and up to 60 seasonal employees in Field Services.

32.    At all material times herein, Fahrendholz was Field Services Manager and was Plaintiff's boss, either immediately or ultimately as the result of his position. He had the ability to terminate, change assigned shifts and change working conditions of Plaintiff's employment and in fact did all three (3)

33.    At all material times herein, Jade Dundas (hereinafter Dundas) was Public Works Director and was Fahrendholz's immediate Supervisor.

34.    Benefits included a retirement plan with Iowa Public Employees' Retirement System (hereinafter IPERS) (Iowa Code Chapter 97B), which has no correlation to and a separate entity from MFPRSI.

35.    Plaintiff was assigned day shift, which was seven (7) a.m. to three (3) thirty (30) p.m. Plaintiff's immediate supervisor was Asphalt Supervisor Simons.

36.     While on Day Shift, preformed work such as DOT pre-trip inspections, cleaning out trucks and washing truck windows, fueling trucks, patching pot holes, picking up trash on City Right-of-way and becoming orientated to immediate areas of assigned work.

37.     After one (1) week on day shift, Plaintiff was moved to the over-night shift, which was ten (10) thirty (30) p.m. to seven (7) a.m.

38.     Plaintiff's immediate supervisor was Mark Oregon (hereinafter Oregon).

39.     Work performed on overnight shift included performing DOT pre-trip inspections, fueling trucks and other City equipment, operating front-end loaders, snowplows, street sweeper and dump trucks.  Repairing water main breaks, removing snow from City streets, cleaning/dusting offices/bathrooms, mopping floors, washing trucks, seek out faulty street lights and cleaning of maintenance building.

40.     After many weeks on the over-night shift, Plaintiff was transferred to the afternoon shift, which was three (3) p.m. to eleven (11) thirty (30) p.m. Plaintiff's immediate supervisor was Don "Red" Nash (hereinafter Nash).

41.     Large percentage of worked preformed on afternoon shift was water main breaks. Remainder of duties was haul spoil to City dump, perform DOT pre-trip inspections, haul away river sand following the 2011 flood, operate snowplows, operate back-hoes, operate front-end loader, operate skid-loader, fuel trucks and other equipment,.

42.     On several occasions Plaintiff was required to work a twelve (12) hour shift and on three (3) occasions required to work sixteen (16) hours straight and required to be back to work after eight (8) hours off. While working most water main breaks, Plaintiff was not afforded a lunch break or two (2) fifteen (15) minute breaks as negotiated by union contract.

43.     While working one afternoon, Plaintiff was taken aside and asked by Nash if he was receiving a disability pension from the City.

44.     Nash was not part of Plaintiff's interview/hiring process and consequently, unaware of Plaintiff's previous employment history.

45.     Plaintiff explained that he was in fact receiving a disability pension, however, not from the City, but from MFPRSI.

46.     Plaintiff went on to further explain to Nash that only the Sworn Fire and Sworn Police personnel of Sioux City are afforded MFPRSI. All other City employees have a retirement plan through IPERS.

47.     Nash explained that the reason he was asking, while at a supervisor's meeting he attended that morning, he was informed by Fahrendholz, which was Nash's immediate Supervisor, to find a reason to terminate Plaintiff.

48.     Nash went on to explain that Fahrendholz was ordered by Scott to "get rid of Wisner". When Plaintiff asked Nash how he knew this, Nash said Fahrendholz told him that "Scott wants us [Field Services] to get rid of you because you're double dipping".

49.    Nash explained to Fahrendholz that Plaintiff was a good worker and "I would rather have Wisner than half the guys we have now".

50.    Fahrendholz said that he did not care what Nash thought and to just find a reason for him to terminate Plaintiff.

51.    Following this conversation with Fahrendholz, Nash reminded Plaintiff, on more than one occasion, to "keep your nose clean, because they are gunning for you"; which Nash met "they", as Fahrendholz and the other Supervisors.

52.    One evening, while working on a water main break, twenty-seven (27) year old co-worker Cody Kumm, while on a rare lunch break, asked Plaintiff if he could "slow down" a little. He was complaining that Plaintiff was working so hard, he was making him look bad

53.    Nash's view of Plaintiff is with what he calls "fireman mentality". Plaintiff is no ball of fire, but works at a normal and consistent pace until the task is completed. Plaintiff does not complain about the task, the sometime's sub-freezing temps or harsh working conditions. Nash believes Plaintiff's former career as a Paramedic and Firefighter have molded Plaintiff into a meticulous, focused and driven for success type of individual.

54.    On or about late February 2012, Plaintiff was transferred back to the asphalt crew on day shift, under the supervision of Simons.

55.     At the beginning of every shift, work assignments would be passed out by Simons to personnel under his direction. Plaintiff never knew from day to day what his work assignment would be, as it was seldom the same.

56.     Even though Plaintiff was assigned asphalt crew, he was forced to work in other areas that he was unfamiliar with, untrained in and with personnel he did not know or trust. Plaintiff would be assigned Asphalt one day, then maybe Concrete the next day or Parks the day after.

57.     On many occasions, Plaintiff would look up to see a Supervisor's vehicle sitting within a city block or two (2) from his assigned work area, as to ambuscade.

58.     On several occasions, Plaintiff would see a Supervisor's vehicle drive by his assigned work area furtively.

59.     In April of 2012, Plaintiff was approached by Robert "Linc" Hinrichs (hereinafter Hinrichs), who is a City Firefighter, to explain that he was contacted by a City council member looking for Plaintiffs full name.

60.     Hinrichs went on to explain that "this" council member was very upset that Plaintiff was working for City again. Plaintiff assumed Hinrichs was actually referring to Mayor Scott, since, by this date and time, Plaintiff was well aware of the clandestine trap that Scott had set and did not seek out any further explanation from Hinrichs.

61.    On April 12, 2012, near the end of the work day, Plaintiff was called into Simon's office. Simons explained that it was time for Plaintiff's Employee Performance Evaluation (hereinafter evaluation) and asked Plaintiff to go wait in the conference room. Field Services' policy and past practice is to give all new employees a three (3) and six (6) month performance evaluation. Plaintiff did not receive a three (3) month evaluation as per policy, but instead, Field Services delayed his for two (2) months.

62.    While waiting in the conference room alone, Plaintiff recieved a cell call from Supervisor Nash and precipitated the conversation by saying "whatever you do, don't say anything" "just sign it". "don't argue with them" [Simons and Baldwin]. Nash went on to say "Brian (Fahrendholz) forced me to sign it" [evaluation]. "just sign it and I will explain it to you later".

63.    Plaintiff had his evaluation with Simons and Baldwin present. (Exhibit C attached hereto and is incorporated by reference hereto as if fully set forth herein)

64.    Said evaluation was held two (2) months past the standard three (3) month time frame as policy and past practice indicates.

65.    After Plaintiff read and signed the erroneously evaluation, Simons warned Plaintiff, "you have till May first (1) to turn it around".

66. Plaintiff met up with Nash later that afternoon to discuss what that inaccurate evaluation was all about.

67. Nash explained that Fahrendholz had not received, from any of his subordinate Supervisors, a legitimate reason to terminate Plaintiff, so he made up a failing evaluation against Plaintiff.

68. Nash explained that he was asked by Fahrendholz to sign the evaluation. Nash, instead, picked it up and read it. Nash tried to explain to Fahrendholz that the evaluation was inaccurate and that this was wrong. Fahrendholz aggressively told Nash, "I don't give a [expletive] what you think, this came from the top, now sign the [expletive] thing".

69. Nash reiterated that Scott had ordered Plaintiff's termination and since Fahrendholz could not find a legitimate reason, he had to "make something up".

70. On April 12, 2012, Plaintiff contacted Hinrichs to query him on what he had met in their early conversation about "a councilman" not pleased with Plaintiff working for the city again.

71. Hinrichs, which was a current City employee at the time, was reluctant at first, but disclosed the conversation he had with "a councilman".

72.    Hinrichs stated that the councilman was John Fitch. Hinrichs went on to say that he was at a casino in North Sioux City in the beginning of 2012 when John Fitch had approached him and asked if he knew the name of the former fireman that had a heart attack and was now working at Field Services.

73.    Fitch, went on to say that he did not know "his" name, but knew "he" had had a heart attack and that "he" had retired from City Fire Department and that "he" was getting a monthly pension and was now working for Field Services. Fitch continued to say that he had "jumped Bridey" [Hayes] and "chewed her ass out for hiring "him" in the first place". Fitch also claimed to have stated to Hayes, "he is double dipping", "he already has an income", "give that job to someone that doesn't have an income", "if he is disabled from one department, then he should be disabled from all departments".

74.    Hinrichs advised Fitch it had to be Danny Wisner [Plaintiff]. Hinrichs told Fitch that he didn't know of any other retired fireman that was working at Field Services.

75.    Plaintiff knew his preceding supervisor from the Fire Department, Lt. Rick Ohl (retired) was in the morning coffee click with Scott. So on the evening of April 12, 2012, Plaintiff contacted Lt. Ohl and explained all of the recent happenings that were afflicting the Plaintiff while working at Field Services.

Case 5:14-cv-04031-DEO   Document 1   Filed 04/29/14   Page 14 of 25

76.   Plaintiff asked Lt. Ohl if he could talk to Scott and advice Scott that Plaintiff was aware of their [Scott and Fitch] clandestine attempt to have Plaintiff terminated.

77.   On the morning of April 13, 2012, while Lt. Ohl and Scott were having their usual morning coffee at HyVee, Lt. Ohl took Scott to a secluded table and relayed that Plaintiff was aware of his and Fitch's surreptitious activity and asked Scott to "call the dogs off". Scott's reply was "I'll look into it".

78.   During the week of April 16, 2012, Plaintiff sought legal advice from Attorney Gene Collins, of Murphy, Collins & Bixenman, 38 First Ave NW, LeMars, Iowa, in reference the surreptitious activity of Scott and Fitch.

79.   Mr. Collins opinion was not for his firm to send correspondence to Scott and/or Fitch, but to wait and let their illegal activity unfold. Mr. Collins said that it would be a moot point at this time, following Lt. Ohl's conversation with Scott, both gentleman [Scott and Fitch] are undoubtedly aware that Plaintiff now grasps their illegal activity.

80.   Mr. Collin's also had the opinion  that both gentleman [Scott and Fitch] were unquestionably aware of the Americans with Disabilities Act and would most likely reverse their clandestine order of termination.

81.   On May 2, 2012 at approximately six (6) a.m., Fahrendholz and his subordinate supervisors were having a meeting with Fahrendholz's immediate supervisor, Public Works Director, Dundas.

82. Fahrendholz handed Dundas the termination notice dated May 2, 2012 and the evaluation dated May 1, 2012, that he [Fahrendholz] had fabricated and that would be presented to Plaintiff later that day.

83. Dundas read through the termination notice and evaluation, then handed it back to Fahrendholz and stated, "looks good".

84. As stated by Nash, Dundas was well aware that the termination notice that he had just read, was in fact, a fabrication and had been concocted by Fahrendholz.

85. In fact, all Field Services supervisors, as well as Dundas, were aware that Fahrendholz had fabricated Plaintiff's April 12 and May 1, 2012 evaluation.

86. Fahrendholz ordered his subordinate supervisors to release all the Field Services' labor personnel fifteen (15) minutes before the end of their regularly scheduled shift on this date.

87. At approximately five (5) forty (40) p.m. on May 2nd, 2012, Plaintiff was ordered into Fahrendholz office for a second evaluation.

88. Present at said evaluation was Fahrendholz, Simons, Baldwin and Supervisor Higgens.

89. Fahrendholz slid the evaluation across his desk and told Plaintiff to read it and sign it. (Exhibit D attached hereto and is incorporated by reference hereto as if fully set forth herein).

90. Plaintiff read and signed the evaluation, giving no approval for or against, but signed it only to indicate that he had reviewed such.

91. Attached to said evaluation was a termination notice, signed by Field Services Manger Fahrendholz, effective end of business day May 2, 2012 (Exhibit E attached hereto and is incorporated by reference hereto as if fully set forth herein) Fahrendholz retained the signed original and gave Plaintiff an unsigned copy of original.

92. On information and belief, Plaintiff alleges that Scott now has and has at all material times had a reputation within city government as being condescending to City staffers, pompous to citizens of the community, and extraneous to the direct chain of command and disrespectful to City policy/practice when beneficial to his personal agenda.

93. On information and belief, Plaintiff alleges that Fitch has at all material times had a reputation within city government as being courteous, respectful to staffers and citizens alike and sincere to his elected position with only a few exceptions.

94. During the entire course of events described here, Defendants conduct was in violation of ADA Title I.

95. Defendants Hayes, Dundas, Fahrendholz, Baldwin and Simons knew that the order from Scott and Fitch to terminate the Plaintiff was in direct violation of Plaintiff's rights under Iowa Code Chapter 216.

96.     Defendants Hayes, Dundas, Fahrendholz, Baldwin and Simons also knew that individually or as a whole could step forward and announce and stop said violation at any time, but instead all chose to let the violation occur.

97. Hayes not only chose not to announce, but readily directed Dundas of Scott's and Fitch's order to violate Plaintiff's lawful rights of employment.

98.     Dundas also refused to announce and directed Fahrendholz of Scott's and Fitch's order to violate Plaintiff's lawful rights of employment.

99.     Not only did Fahrendholz refused to announce, he chose to precipitate Plaintiff's termination by fabricating, not one (1), but two (2) substandard evaluations; one dated April 12, 2012 and the other dated May 1, 2012; both leading to Plaintiff's termination, dated May 2, 2012.

100.    Both Baldwin and Simons also refused to announce, but instead knowing signed Plaintiff's April 12, 2012 and May 1, 2012 employee performance evaluation even though they knew it was bogus and untrue.

101.    DEFENDANTS behavior toward Plaintiff was malicious, unwarranted and blatant misconduct.

## COUNT I
## DEFAMATION
## DANNY WISNER AGINST CITY OF SIOUX CITY, BOB SCOTT, JOHN FITCH, BRIDEY HAYES, JADE DUNDAS, BRIAN FAHRENDHOLZ, BRAD BALDWIN AND PATRICK SIMONS.

102. Plaintiff pleads paragraphs 1-101 as if fully set forth herein.

103. All defendants knowing participated in or had knowledge of the

Plaintiff's fabricated employee performance evaluation which lead to his

termination.

104. Plaintiff was denied jobs with the Nebraska Department of Roads-

Norfolk District-South Sioux City Office and Woodbury County Iowa,

Secondary Roads Department, due to defamation inflicted by

Defendants.

WHEREFORE, Plaintiff prays that the Court enter judgment against

Defendants, declaring the conduct engaged in by Defendants to be in

violation of Plaintiff's rights and award damages as follows:

- a. Plaintiff be awarded damages to compensate, reimburse and make whole the Plaintiff for all the past and present benefits Plaintiff should have received had it not been for Defendants illegal conduct including, but not limited to back pay with interest, front pay, benefits, training, promotions and seniority;

- b. Plaintiff be awarded compensation for past and future suffering, emotional distress, loss of enjoyment of life and non-pecuniary losses;

Case 5:14-cv-04031-DEO   Document 1   Filed 04/29/14   Page 19 of 25

c. Plaintiff be awarded punitive damages in an amount appropriate to punish these Defendants for willful and malicious misconduct and necessary to deter these Defendants from engaging in such misconduct in the future;

d. Plaintiff be awarded all past and future medical and counseling expenses;

e. Plaintiff be awarded injunctive relief preventing Defendants from future unlawful practices, including terminating Defendants Hayes, Dundas and Fahrendholz and ordering Scott to resign as City Mayor;

f. As injunctive relief or such other relief as is just and equitable, that the Court order the City to hire a non-local expert in disability discrimination to evaluate the City's policy and procedures and make recommendations to revise them to bring the City to compliance with the state and federal law and to require the City to implement those policies and procedures;

g. Plaintiff be awarded the costs and expenses of this action and award Plaintiff reasonable attorney's fees as provided in 42 U.S.C. Section 2000e-5(1);

h. Plaintiff be awarded interest provided by law;

i. Such other and further relief as the Court may deem proper.

## COUNT II
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
## DANNY WISNER AGINST CITY OF SIOUX CITY, BOB SCOTT, JOHN FITCH, BRIDEY HAYES, JADE DUNDAS, BRIAN FAHRENDHOLZ, BRAD BALDWIN AND PATRICK SIMONS.

105. Plaintiff pleads paragraphs 1-104 as if fully set forth herein.

106.    Defendants knowing participated in or had knowledge of Plaintiff

repeatedly being transferred in an attempt to coerce Plaintiff to resign or

find some reason to terminate him.

WHEREFORE, Plaintiff prays that the Court enter judgment against

Defendants, declaring the conduct engaged in by Defendants to be in

violation of Plaintiff's rights and award damages as follows:

> a. Plaintiff be awarded damages to compensate, reimburse
> and make whole the Plaintiff for all the past and present
> benefits Plaintiff should have received had it not been for
> Defendants illegal conduct including, but not limited to
> back pay with interest, front pay, benefits, training,
> promotions and seniority;
>
> b. Plaintiff be awarded compensation for past and future
> suffering, emotional distress, loss of enjoyment of life and
> non-pecuniary losses;
>
> c. Plaintiff be awarded punitive damages in an amount
> appropriate to punish these Defendants for willful and
> malicious misconduct and necessary to deter these
> Defendants from engaging in such misconduct in the
> future;
>
> d. Plaintiff be awarded all past and future medical and
> counseling expenses;
>
> e. Plaintiff be awarded injunctive relief preventing
> Defendants from future unlawful practices, including
> terminating Defendants Hayes, Dundas and Fahrendholz
> and ordering Scott to resign as City Mayor;
>
> f. As injunctive relief or such other relief as is just and
> equitable, that the Court order the City to hire a non-local
> expert in disability discrimination to evaluate the City's
> policy and procedures and make recommendations to
> revise them to bring the City to compliance with the state
> and federal law and to require the City to implement
> those policies and procedures;

g. Plaintiff be awarded the costs and expenses of this action and award Plaintiff reasonable attorney's fees as provided in 42 U.S.C. Section 2000e-5(1);

h. Plaintiff be awarded interest provided by law;

i. Such other and further relief as the Court may deem proper.

## COUNT III
## DISCRIMINATION AND RETALIATION
## DANNY WISNER AGINST CITY OF SIOUX CITY, BOB SCOTT, JOHN FITCH, BRIDEY HAYES, JADE DUNDAS, BRIAN FAHRENDHOLZ, BRAD BALDWIN AND PATRICK SIMONS.

106. Plaintiff pleads paragraphs 1-105 as if fully set forth herein.

107. Defendants knowing participated in or had knowledge of

discrimination of Plaintiff due to his disability which he is protected under

the ADA Title VII.

108. All Defendants had knowledge of Plaintiff's disability pension from

MFPRSI and all participated in discriminating against Plaintiff for such.

109. Instead of Defendants taking appropriate action, Hayes, Dundas,

Fahrendholz, Baldwin and Simons chose to facilitate Plaintiff's termination.

WHEREFORE, Plaintiff prays that the Court enter judgment against

Defendants, declaring the conduct engaged in by Defendants to be in

violation of Plaintiff's rights and award damages as follows:

a. Plaintiff be awarded damages to compensate, reimburse and make whole the Plaintiff for all the past and present benefits Plaintiff should have received had it not been for Defendants illegal conduct including, but not limited to

back pay with interest, front pay, benefits, training, promotions and seniority;

b. Plaintiff be awarded compensation for past and future suffering, emotional distress, loss of enjoyment of life and non-pecuniary losses;

c. Plaintiff be awarded punitive damages in an amount appropriate to punish these Defendants for willful and malicious misconduct and necessary to deter these Defendants from engaging in such misconduct in the future;

d. Plaintiff be awarded all past and future medical and counseling expenses;

e. Plaintiff be awarded injunctive relief preventing Defendants from future unlawful practices, including terminating Defendants Hayes, Dundas and Fahrendholz and ordering Scott to resign as City Mayor;

f. As injunctive relief or such other relief as is just and equitable, that the Court order the City to hire a non-local expert in disability discrimination to evaluate the City's policy and procedures and make recommendations to revise them to bring the City to compliance with the state and federal law and to require the City to implement those policies and procedures;

g. Plaintiff be awarded the costs and expenses of this action and award Plaintiff reasonable attorney's fees as provided in 42 U.S.C. Section 2000e-5(1);

h. Plaintiff be awarded interest provided by law;

i. Such other and further relief as the Court may deem proper.

## COUNT IV
## IOWA CODE CHAPTER 216
## DANNY WISNER AGAINST ALL DEFENDANTS

COMES NOW Plaintiff for his cause of action against the

Defendants, and allege:

110.    Plaintiff pleads paragraphs 1-109 as if fully set forth herein.

111.    Defendants actions constitute unlawful retaliation against

Plaintiff for receiving a disability pension from MFPRSI.

112.    The individual Defendants aided and abetted said

discrimination and retaliation in violation of Iowa Chapter 216

WHEREFORE, Plaintiff prays that the Court enter judgment against

Defendants, declaring the conduct engaged in by Defendants to be in

violation of Plaintiff's rights under Iowa Code Chapter 216 and award

damages as follows:

> a. Plaintiff be awarded damages to compensate, reimburse
> and make whole the Plaintiff for all the past and present
> benefits Plaintiff should have received had it not been for
> Defendants illegal conduct including, but not limited to
> back pay with interest, front pay, benefits, training,
> promotions and seniority;
>
> b. Plaintiff be awarded compensation for past and future
> suffering, emotional distress, loss of enjoyment of life and
> non-pecuniary losses;
>
> c. Plaintiff be awarded all past and future medical and
> counseling expenses;
>
> d. Prejudgment interest as provided by Iowa law; and

Page **24** of **25**

e.  Such other and further relief as the Court may deem
proper.

## JURY DEMAND

CONES NOW Plaintiff and pursuant to Rule 38(b) of the Federal Rules o

Civil Procedure demand a trial by jury of all issues alleged in this

Complaint.

Respectively submitted this __day of _____, 2014

Danny K Wisner
310 34th St
Sioux City, IA 51104
(712) 490-3337
E-mail: dkwisner@gmail.com

Case 5:14-cv-04031-DEO   Document 1   Filed 04/29/14   Page 25 of 25